IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAMES ANDREW METCALF,**

    Plaintiff,

v.                                                                             Civil Action No. **3:23CV598**

**THE GEO GROUP, INC.,** *et al.,*

    Defendants.

MEMORANDUM OPINION

James Andrew Metcalf, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] Metcalf contends that Defendants[2] denied him adequate care during his incarceration at Lawrenceville Correctional Center ("LCC"). The matter is before the Court on the Complaint, (ECF No. 1-1), and the Motion to Dismiss filed by Defendants Stephen Herrick, the Director of Health Services for the VDOC, and Deborah Lewis, the Regional Ombudsman for the VDOC ("Defendants"), (ECF No. 25). Defendants and the Court provided Metcalf with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF Nos. 27, 34.) Metcalf has

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Defendants are: The Geo Group, Inc.; Esker Tatum, Facility Administrator/Warden at LCC; Stephen Herrick, Director of Health Services for the Virginia Department of Corrections ("VDOC"); Sharon King, Health Services Administrator; Andrea Green, Grievance Coordinator; and Deborah Lewis, Regional Ombudsman.

filed a Response. (ECF No. 31.) For the reasons stated below, the Motion to Dismiss, (ECF No. 25), will be GRANTED.

## I. STANDARD OF REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.   SUMMARY OF ALLEGATIONS

In his lengthy Complaint, Metcalf complains about at least three different alleged ailments occurring during the same time period that he believes were not addressed in accordance with VDOC policy. Notably, instead of naming doctors or medical providers, Metcalf names those individuals involved in the grievance process and faults them for their handling of his grievance materials. Metcalf does not provide one succinct section of facts, but he has at least two separate

sections that allege facts supporting his claims. (*See* ECF No. 1-1, at 4, 10.) Metcalf first alleges in his "STATEMENT OF FACTS" as follows:[3]

> 12. On August 27, 2021, the Plaintiff received laboratory/diagnostic test(s) results that indicated that he had high cholesterol and was scheduled to be seen by the facility physician.
> 13. As of May 24, 2022, the Plaintiff had not been seen by the physician to discuss the lab results or consulted on the high cholesterol as indicated.
> 14. In March 2022, the Plaintiff's prescription for his pain medication and allergy medication had expired and required an examination by the physician to renew.
> 15. On April 12, 2022, the Plaintiff submitted a third request for medical services to be seen by the physician to renew his medications.
> 16. On April 15, 2022, after not being seen . . . the Plaintiff submitted a written complaint stating that he had not been seen by the facility physician within the appropriate time frame.
>     . . . .
> 18. On May 10, 2022, the Plaintiff submitted a request for dental services complaining that he was having pain in his mouth where he had previously had two teeth extracted in January 2021.
>     . . . .
> 20. On May 11, 2022, the Plaintiff began to have unrelenting pain in his mouth and the pain had spread to his ear and throat, so he submitted an emergency grievance seeking medical care.
> 21. On May 11, 2022, the dentist responded at 1600 that the Plaintiff would be scheduled to see the dentist.
> 22. On May 12, 2022, the following day, after not being called to medical, the Plaintiff went on his own to medical to inquire about being seen per the dentist's response on the emergency grievance. The dentist then examined the Plaintiff and noted ulcer like sores in his mouth and prescribed Benadryl to ameliorate inflammation. However, the Plaintiff was not seen my any medical professional to assess his sore throat or earache.

(ECF No. 1-1, at 4–6.) Between May 12, 2022, and November 3, 2022, Metcalf filed a variety of complaints, grievances, and appeals about his medical complaints. (*Id.* at 6–10.) Notably,

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling and omits the emphasis in the quotations from Metcalf's submissions. The Court also omits the internal citations in the quotations from Metcalf's Complaint.

Because the Complaint is lengthy, the Court recounts only the allegations relevant to the Motion to Dismiss.

4

Metcalf's factual sections do not always provide a clear picture of what medical condition he is complaining about. Specific to Defendants Herrick and Lewis, Metcalf alleges as follows:

> 6.  Defendant Deborah Lewis . . . is and was at all times mentioned herein the Regional Ombudsman for VADOC and is legally responsible for ensuring inmates of VADOC within her region have adequate access to a meaningful grievance process in accordance with VADOC Operating Procedures and that VADOC Operating Procedures are followed and adhered to by VADOC institutions, thereby protecting the rights of inmates.
> 7.  Defendant Stephen Herrick . . . is and was at all times mentioned herein the Director of Health Services for the VADOC and he is legally responsible for the oversight and management of the health services provided to inmates in the Eastern District of VADOC. Herrick is also responsible for answering inmate grievance appeals concerning health related grievances ensuring policies and procedures established by the VADOC are being followed by medical departments at all VADOC institutions including LVCC.
>     . . . .
> 35. On June 5, 2022, the Plaintiff appealed the grievance inmate decision [rejecting a regular grievance as a request for services] to Defendant Lewis, the Regional Ombudsman.
> 36. On June 8, 2022, Defendant Lewis reviewed the appealed intake decision by Defendant Green concerning the first emergency grievance complaint by the Plaintiff. Defendant Lewis, at this point, gained personal knowledge of the violation, and upheld the intake denial by Defendant Green. . . .
>     . . . .
> 40. On June 22, 2022, the Plaintiff appealed the intake decision [determining that the filing period had expired] to Defendant Lewis for review. . . .
>     . . . .
> 43. On June 25, 2022, the Plaintiff mailed his appeal to Defendant Lewis.
> 44. On June 27, 2022, after review of the appeal by the Plaintiff, Defendant Lewis overturned the intake decision and directed Defendant Green to log the grievance concerning the second emergency grievance that went unanswered.
>     . . . .
> 47. On July 26, 2022, the Plaintiff appealed the grievance decision of Level I (Defendant Tatum) to the Level II for review (Defendant Herrick).
> 48. On August 10, 2022, the Level II (Defendant Herrick – Health Services Director) reviewed the appealed grievance concerning the Plaintiff's complaint about not receiving his medication and determined that the grievance was UNFOUNDED. Therefore, acknowledging that Defendant Herrick gained personal knowledge of the offenses and left them intact without taking any corrective action.
> 49. In the response to the grievance by the Level II it states that Metcalf was a "no show" for four separate appointments. However, the Plaintiff was never called to medical not did he sign a refusal form for those missed appointments.

5

(*Id.* at 3–10.) In his second set of facts, entitled "FACTUAL ALLEGATIONS," Metcalf alleges:

> **A. Failure to provide adequate medical care for the Plaintiff's high cholesterol.**
> 54.   The Plaintiff's "Laboratory/Diagnostic Test(s) Results" from August 27, 2021, revealed that the Plaintiff has high cholesterol and the physician at LVCC, I. Esochagi, noted that the Plaintiff would be scheduled for "CCC" (Chronic Care Consultation) for his high cholesterol. However, the Plaintiff was not seen until June 30, 2022, ten (10) months after his diagnosis.
>
> . . . .
>
> 57.   Through the Defendants' acknowledgements and responses to the Plaintiff's grievances, they demonstrate that they knew of and disregarded a substantial risk of serious harm to the Plaintiff and their actions or inactions were inappropriate to the in light of that risk, clearly demonstrating deliberate indifference to the Plaintiff's serious medical need to be treated for high cholesterol.
>
> **B. Failure to provide adequate medical care and medication for the Plaintiff's chronic knee, femur, hip and shoulder injuries.**
> 58.   The Plaintiff has sustained multiple injuries and has undergone many surgeries, which are well documented in his medical record and was prescribed Indocin to reduce pain and ameliorate inflammation within those injuries and has been prescribed this medication for several years.
>
> . . . .
>
> 60.   The failure to see the Plaintiff for over three (3) months to renew his prescriptions demonstrates that the Defendants denied him a basic human need for treatment and pain relief . . . .
>
> . . . .
>
> 62.   Through the Defendants' acknowledgement and responses to Plaintiff's grievances they demonstrate that they knew of an disregarded a substantial risk of serious harm to the Plaintiff . . . .
>
> **C. Failure to respond to the Plaintiff's emergency grievance for an unrelenting ear ache . . . (First offense).**
> 63.   The Plaintiff has been previously diagnosed with bi-lateral sensorineural hearing loss.
>
> . . . .
>
> 66.   The refusal to see the Plaintiff within the appropriate time frame for emergency grievances left the Plaintiff in substantial pain for over two weeks. He was never seen for the ailment by LVCC's medical department and was left to suffer needlessly without relief.
> 67.   Through the Defendants' acknowledgement and responses to Plaintiff's emergency grievances, written complaints, and regular grievances they demonstrate that they knew of and disregarded a substantial risk of serious harm to the Plaintiff . . . .

(ECF No. 1-1, at 10–14.) Metcalf raises the following claims for relief:

    Claim One:    Defendants Geo Group, Inc, Tatum, King, Green, and Lewis denied him adequate medical care in violation of the Eighth Amendment[4] for failing to treat his high cholesterol. (*Id.* at 14–20.)

    Claim Two:    Defendants Geo Group, Inc, Tatum, King, Green, and Herrick denied him adequate medical care by delaying his prescription of pain medicine. (*Id.* at 20–26.)

    Claim Three:    Defendants Geo Group, Tatum, King, Green, and Lewis "fail[ed] to properly respond to emergency grievance[s]" with respect to his ear ache. (*Id.* at 26–37.)[5]

Metcalf requests damages and declaratory relief. (ECF No. 1-1, at 37.)

### III. ANALYSIS

Although not well articulated, Metcalf appears to suggest that Defendant Lewis is accountable in Claims One and Three on 1) the basis of supervisory liability; 2) because she failed to address the alleged denial of adequate medical care in the appeals she responded to; and, 3) because she failed to ensure that the grievance process ran smoothly and in accordance with VDOC policy. For Defendant Herrick, who is only named in Claim Two with respect to the alleged denial of pain medications, Metcalf contends that he is liable on 1) the basis of supervisory liability; 2) because he failed to address the alleged denial of adequate medical care when he found a grievance unfounded; and 3) for not ensuring VDOC policies were followed. Although Metcalf indicates that his claims against Defendants are brought as claims of denial of adequate medical care under the Eighth Amendment, the thrust of his allegations is that Defendants failed to follow VDOC policy in responding to his grievance materials, a claim that is a non-starter, as discussed in III.C below.

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] Metcalf lists this as two claims because apparently, he believes that he failed to receive proper responses to two emergency grievances. The Court combines this into one claim.

7

### A.  Supervisory Liability

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

Metcalf contends that Defendants Lewis and Herrick are liable on a theory of supervisory liability. (*See, e.g.* ECF No. 1-1 ¶¶ 101, 126, 130.) Metcalf indicates that Defendants Lewis's and Herrick's liability stems from their supervisory roles as the Regional Ombudsman and Director of Health Services of the VDOC. Thus, Metcalf tries to impose liability on Defendants solely because they serve in supervisory roles. Contrary to Metcalf's suggestion, neither Defendant is liable simply because they supervised other individuals who may have violated his rights. *See Vinnedge*, 550 F.2d at 928. To the extent that Metcalf believes that Defendants Lewis and Herrick should be held liable under a theory of *respondeat superior* simply based on their positions, he fails to state

a claim for relief.[6]  *Iqbal*, 556 U.S. at 676.  Accordingly, any claim based on supervisory liability will be DISMISSED.

### B. Responses to Grievance Appeals

Metcalf also tries to hold Defendants liable for their role in the grievance appeal process. Metcalf repeatedly claims that Defendants were personally involved because "Defendants' acknowledgement and responses to Plaintiff's emergency grievances, written complaints, and regular grievances . . . demonstrate that they knew of and disregarded a substantial risk of serious harm to the Plaintiff." (ECF No. 1-1, at 14.)  With respect to Defendant Lewis, Metcalf's allegations are hard to follow.  Metcalf indicates that "o[n] June 5, 2022, [he] appealed the grievance intake decision to Defendant Lewis." (ECF No. 1-1 ¶ 35.)  The Court speculates this appeal was for the grievance that was denied the day before as a "request for services" (*id.* ¶ 34), in which he complained that no one answered one of his emergency grievances for his earache and sore throat (*id.* ¶ 32).  Metcalf faults Defendant Lewis for upholding the intake denial on the grievance and contends that "at this point [Lewis] gained personal knowledge of the violation." (*Id.* ¶ 36.)  Metcalf fails to identify with any specificity what "violation" he is referring to here.

Second, Metcalf indicates that "[o]n June 22, 2022, [he] appealed the intake decision to Defendant Lewis for review." (*Id.* ¶ 40.)  This appears to be related to a June 10, 2022 regular

---

[6] To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show that:
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted) (citations omitted).  Metcalf fails to allege facts that support any one of these three factors.

grievance that was rejected as untimely in which he complained for a second time that his emergency grievance went unanswered. (*Id.* ¶¶ 37, 39.) Metcalf then indicates he received a response on June 24, 2022, and that he was scheduled to see a provider. (*Id.* ¶ 43.) On June 27, 2022, "Defendant Lewis overturned the intake decision and directed Defendant Green to log the grievance concerning the second emergency grievance that went unanswered." (*Id.* ¶ 44.) Thus, it appears that Metcalf received a favorable result from Defendant Lewis, and it is unclear why he believes she violated his rights with this response.

With respect to Defendant Herrick, "[o]n July 26, 2022, [Metcalf] appealed the grievance decision of Level I (Defendant Tatum) to Level II for review (Defendant Herrick)." (*Id.* ¶ 47.) This regular grievance complained about not "receiving his medication." (*Id.* ¶ 48.) Defendant Herrick deemed the grievance as unfounded because according to the medical records, "Metcalf was a 'no show' for four separate appointments." (*Id.* ¶¶ 47, 49.) Metcalf contends that Defendant Herrick "gained personal knowledge of the offenses" through his response. (*Id.* ¶ 47.)

As a preliminary matter, simply "[r]uling against a prisoner on an administrative complaint does not [automatically] cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). *cf. Chamberlain v. Clarke*, No. 7:14–cv–00013, 2014 WL 2154183, at *3 (W.D. Va. May 22, 2014) (noting that an inmate's "dissatisfaction with [a prison official's] responses to his grievances is a non-starter"). Moreover, generally, "a supervisor's after–the–fact denial of a grievance falls short of establishing § 1983 liability." *DePaola v. Ray*, No. 7:12CV00139, 2013 WL4451236, at *8 (W.D. Va. July 22, 2013) (citing *Brooks v. Beard*, 167 F. App'x 923, 925 (3rd Cir. 2006)). Thus, contrary to Metcalf's suggestion, neither Defendant is liable simply because they responded to a grievance appeal complaining about a purported violation of his rights.

Metcalf also fails to allege facts that plausibly suggest "that the communication[s], in [their] content and manner of transmission, gave the prison official[s] sufficient notice to alert [them] to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Metcalf must allege that Defendants "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F .3d 555, 561 (7th Cir. 1995)). In sum, Metcalf alleges that Defendant Lewis upheld the denial of a regular grievance as a request for services and overturned an intake decision that a regular grievance was untimely (earache and sore throat) and that Defendant Herrick found a regular grievance was unfounded because, from his review, the medical record reflected that Metcalf failed to show up to four medical appointments (pain medications). On the face of the Complaint,[7] Metcalf's allegations fall short of permitting the conclusion that Metcalf's appeals placed Defendants on sufficient notice of an excessive risk of harm to Metcalf's health or safety.[8] As

---

[7] At this juncture, on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must review the adequacy of the Complaint. The Court may not consider Metcalf's attached grievance materials assessing the propriety of the Complaint under Federal Rule of Civil Procedure 12(b)(6).

[8] Defendants, who were in supervisory roles of the administration of the VDOC, were entitled to rely on the medical judgment of the medical providers at LCC with respect to the appropriate treatment of Metcalf. *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (holding that once an inmate is placed in the care of appropriate medical personnel, "a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir 2004))). To overcome such reliance, Metcalf must allege facts indicating that Defendants knew that the care provided by medical personnel was so obviously incompetent that it posed a substantial risk of harm to his health. *See Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Metcalf does not allege facts that rise to that level here.

With respect to his complaints in his two emergency grievances about his ear and sore throat, from Metcalf's own allegations, it is evident that the underlying complaint, not having his emergency grievance answered about his earache and sore throat, was false, because he submitted the emergency grievance on May 11, 2022, and was seen and treated by the dentist on May 12,

such, Metcalf's limited factual allegations against Defendants fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683). Accordingly, Metcalf's claims against Defendants based on their role in the grievance process will be DISMISSED.

### C.  Failing to Ensure VDOC Policies Were Followed

Metcalf contends that Defendant Lewis failed to ensure that his grievance materials were properly handled. But "inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Doans v. Rice*, No. 87-7244, 1987 WL 38813, at *1 (4th Cir. Oct. 15, 1987) ("Because inmate grievance procedures are not constitutionally required in state prison systems, the failure to follow grievance procedures does not give rise to a § 1983 claim."). Thus, any claim that Defendant Lewis failed to ensure that the grievance process was properly followed fails to state a claim for relief.

Similarly, to the extent that Metcalf contends that Defendant Lewis failed to ensure that prison officials followed VDOC policies with respect to the handling of his grievance materials, he fails to state a claim for relief. Violations of prison operating procedures do not implicate constitutional rights and are not cognizable under § 1983. *See Riccio v. Cty. of Fairfax*, 907 F.2d

---

2022. Thus, Defendant Lewis could reasonably believe that Metcalf's complaints had or were being addressed.
  With respect to Metcalf's complaints about the delay in receiving pain medication, Defendant Herrick could reasonably believe that Metcalf was not serious about having this concern addressed because the medical record he based his decision on reflected that Metcalf missed four scheduled appointments.

12

1459, 1469 (4th Cir. 1990). Accordingly, any claim against Defendant Lewis based on her failure to ensure that his grievance materials were properly handled will be DISMISSED.

With respect to Defendant Herrick, Metcalf contends that his medical complaints were not handled in compliance with VDOC policies and as a supervisor Defendant Herrick is liable.[9] (ECF No. 1-1 ¶¶ 125, 127, 130.) As explained above, violations of prison policies fail to state a claim for relief under § 1983. *Riccio*, 907 F.2d at 1469. Accordingly, any claim that Defendant Herrick was liable to him for not ensuring that VDOC policies were followed will be DISMISSED.

### IV.   CONCLUSION

Accordingly, the Defendants' Motion to Dismiss, (ECF No. 25), will be GRANTED. Any claim against Defendant Lewis and Herrick will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 14 January 2025
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[9] To the extent that Metcalf once again tries to impute liability on Defendant Herrick on the basis of supervisory liability for "staff shortages and overt violation of VADOC policies by GEO and GEO's employees," (ECF No. 1-1 ¶ 130), he fails to state a claim for relief.