IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES ANDREW METCALF,

     Plaintiff,

v.

Civil Action No. **3:23CV598**

THE GEO GROUP, INC., *et al.*,

     Defendants.

## MEMORANDUM OPINION

James Andrew Metcalf, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] Metcalf contends that Defendants[2] denied him adequate medical care during his incarceration at Lawrenceville Correctional Center ("LCC"). The matter is before the Court on the Complaint, (ECF No. 1-1), and the Motion for Summary Judgment filed by the remaining Defendants Geo Group, Inc., Tatum, King, and Green ("Defendants"), (ECF No. 25). Defendants and the Court provided Metcalf with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF Nos. 21, 34.) Metcalf filed a response. (ECF No. 29.) Defendants

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Defendants are:  Geo Group, Inc.; Esker Tatum, Facility Administrator/Warden at LCC; Stephen Herrick, Director of Health Services for the Virginia Department of Corrections ("VDOC"); Sharon King, Health Services Administrator; Andrea Green, Grievance Coordinator; and Deborah Lewis, Regional Ombudsman.  By Memorandum Opinion and Order entered on January 14, 2025, the Court granted the Motion to Dismiss filed by Defendants Herrick and Lewis and dismissed all claims against them.  (ECF Nos. 38, 39.)

subsequently filed a reply. (ECF No. 30.)[3]  The Motion for Summary Judgment, (ECF No. 25), will be GRANTED.

## I.    METCALF'S ALLEGATIONS AND CLAIMS

In his lengthy Complaint, Metcalf complains about at least three different ailments occurring during the same time period that he believes were not addressed in accordance with VDOC policy.  Notably, instead of naming doctors or medical providers, Metcalf names those individuals involved in the grievance process and faults them for their handling of his grievance materials.  As explained in the Memorandum Opinion entered on January 14, 2025, Metcalf does not provide one succinct section of facts, but he has at least two separate sections that allege facts supporting his claims, which complicates the Court's review of his complaint. (*See* ECF No. 1-1, at 4, 10.)[4]  From Metcalf's Complaint, and stated as succinctly as possible, it appears that he faults Defendants for failing to provide him with medication when his prescription for chronic pain expired, failing to provide him with a timely doctor's appointment for high cholesterol, and failing to timely address two emergency grievances complaining about ear pain.  Metcalf raises the following remaining claims for relief:

---

[3] Thereafter, Metcalf and Defendants filed several unauthorized sur-replies. (ECF Nos. 32, 33, 35, 36.)  Leave of court was required before filing any sur-reply. *See* E.D. Va. Loc. Civ. R. 7(F)(1) (explaining that after a reply, "[n]o further briefs or written communications may be filed without first obtaining leave of Court.")  Accordingly, these submissions are not properly before the Court and will not be considered.

The Court recognizes that in its September 11, 2024 Memorandum Order providing *Roseboro* notice, that it permitted Metcalf to file a further response to the Motion for Summary Judgment. (ECF No. 34, at 1.)  Metcalf's submission after the *Roseboro* notice, however, was clearly directed to Defendants' reply and therefore will not be considered.

[4] The Court employs the pagination assigned by the CM/ECF docketing system.  The Court corrects the capitalization, punctuation, and spelling and omits the emphasis in the quotations from Metcalf's submissions.  The Court also omits the internal citations in the quotations from Metcalf's Complaint.

Claim One:    Defendants Geo Group, Inc, Tatum, King, and Green denied him adequate medical care in violation of the Eighth Amendment[5] for failing to treat his high cholesterol. (*Id.* at 14–20.)

Claim Two:    Defendants Geo Group, Inc, Tatum, King, and Green denied him adequate medical care by delaying his prescription of pain medicine. (*Id.* at 20–26.)

Claim Three:    Defendants Geo Group, Inc., Tatum, King, and Green "fail[ed] to properly respond to emergency grievance[s]" with respect to his earache. (*Id.* at 26–37.)[6]

Metcalf requests damages and declaratory relief. (ECF No. 1-1, at 37.)

## II.    STANDARD FOR SUMMARY JUDGMENT

In addition to the standards for summary judgment identified above for the moving party, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere scintilla of evidence, however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing

---

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[6] Metcalf lists this as two claims because apparently, he believes that he failed to receive proper responses to two emergency grievances. The Court combines this into one claim.

*Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials.").

In support of their Motion for Summary Judgment, Defendants submit: the declaration of Defendant Andrea Green, (ECF No. 22-1); the declaration of Defendant Sharon King, (ECF No. 22-2); medical records for Metcalf, (ECF Nos. 22-3, 22-4), and VDOC Operating Procedures ("Operating Procedure," ECF Nos. 22-5, 22-6).

At this stage, the Court is tasked with assessing whether Metcalf "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Metcalf submitted a verified Complaint, (ECF No. 1-1), an Affidavit, (ECF No. 29-1),[7] and a variety of documents including grievance material

---

[7] The facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Summary judgment affidavits must also "set out facts that would be admissible in evidence." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *see also Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). In his Affidavit, Metcalf makes statements that are based on hearsay; are conclusory, speculative, and immaterial; and are of no value in assessing the propriety of summary judgment. For example, Metcalf provides facts

and medical records that the Court considers where relevant and admissible, (ECF No. 29-2 through 29-13).

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Metcalf.

### III.    UNDISPUTED FACTS

As explained previously, Metcalf complains about three distinct medical complaints that occurred during March through October of 2022. Metcalf pled the facts in his Complaint in a manner that is difficult to recount neatly in a summary manner. Metcalf jumps around between dates and ailments in his Complaint and in his Affidavit. Metcalf's medical appointments addressed more than one complaint, and Metcalf's many grievances were moving through the system at the same time. The Court will address each complaint separately in chronological order.

### A.    Defendants Green's and King's Role at LCC

Defendant Green is the Institutional Grievance Coordinator at LCC. (ECF No. 22-1 ¶ 1.) Defendant Green's job duties do not include scheduling inmates for medical care or ensuring that inmate's receive medical care. (*Id.* ¶ 4.) Defendant Green is not responsible for ensuring VDOC policies are followed, and her "duties are limited to review[ing] and process[ing] informal complaints and grievances," including investigating and recommending responses to the Warden, and maintaining grievance records. (*Id.*) Defendant Green is not involved in the emergency grievance process and does not review or respond to emergency grievances. (ECF No. 22-1 ¶ 20.)

Defendant King is the Health Services Administrator at LCC. (ECF No. 22-2 ¶ 1.) Defendant King's job duties do not include transmitting emergency grievances to the medical

---

unrelated to his specific claims here and his own speculation and conclusions about the root cause of delays, such as LCC being "short staffed." (ECF No. 29-1 ¶¶ 33–37, 43.) Metcalf's statements relying on news articles about Geo Group, Inc., are not based on his own personal knowledge and will also not be considered in evaluating the Motion for Summary Judgment.

department. (*Id.* ¶ 4.) Emergency grievances are handled by security staff, and the medical department relies on security staff for the timely delivery of these grievances. (*Id.*)

Defendant King explains that LCC is not the custodian of the medical records for inmates housed within that facility. (ECF No. 22-2 ¶ 13.) When an inmate is transferred out of LCC, staff must transfer all medical records for an inmate to the VDOC, and LCC is not permitted to retain copies of any records. (*Id.* ¶ 13.) Thus, the LCC relies on the VDOC to reproduce records for litigation brought by former inmates at LCC. (*Id.* ¶ 13.) Metcalf was transferred to a different facility around November 17, 2022, (*id.* ¶ 19); therefore, at the time he filed the Complaint, LCC would not have had any of his records.

## B.     Metcalf's Prescription Renewal (Claim Two)[8]

According to Metcalf, unidentified prescriptions expired in March 2022. (ECF No. 29-1 ¶ 12.) At some unidentified time, he submitted an inmate request form, but he never received a response. (*Id.*) After two weeks of not receiving a response, he submitted a second request, but again never received a response. (*Id.*)[9] On April 12, 2022, twelve days after his prescriptions expired, Metcalf drafted a third request to be seen by the doctor to renew his prescriptions. (*Id.* ¶ 13.)[10] The Inmate Request stated, "THIRD REQUEST, I need to be seen by the doctor to renew my prescriptions and be prescribed CTM for allergies." (ECF No. 1-4, at 2.) The request did not mention what "prescriptions" he needed renewed beside the request for allergy medicine. While

---

[8] To repeat as little information as possible, the Court recounts the facts supporting Claim Two first, consistent with Defendants Green's and King's declarations.

[9] Metcalf did not submit copies of these first two requests, and Defendants' counsel indicates that they were not received from the VDOC along with Metcalf's other records. (ECF No. 22, at 3.) While Defendants argue that this means that Metcalf did not actually submit these requests, Metcalf has sworn that he did, and the Court accepts that as true.

[10] The Court omits secondary citations in quotations from the record.

Metcalf contends that he submitted this third request on April 12, 2022, it was not received by LCC staff until May 18, 2022. (*Id.*)

On April 15, 2022, Metcalf drafted a Written Complaint, stating that "I submitted an offender request for to be seen by the doctor to re-new my medication prescription and request new prescription for allergies. I have not been seen within the 72 hour time frame per VA DOC Operating Procedure 720.1 Section IV.B.3."[11] (ECF No. 1-4, at 3.) The Written Complaint was stamped received on April 19, 2022, and was assigned to the medical department. (*Id.*) On April 28, 2022, Defendant King noted that Metcalf was "scheduled for the physician as requested." (*Id.*) Metcalf's appointment was scheduled for May 10, 2022. (ECF No. 22-1 ¶ 8.)

LCC's annual lockdown occurred between April 9 and 15, 2022. (ECF No. 22-2 ¶ 10.) During the annual lockdown, all pods are locked down to conduct a thorough sweep and investigation of all cells and areas for contraband and safety concerns. (*Id.*) Inmate movement is severely limited, and non-emergent medical care can be delayed or limited, resulting in a backlog of medical appointments immediately after the lockdown. (*Id.*)

Metcalf missed his scheduled appointment on May 10, and he was rescheduled for an appointment on June 8. (ECF No. 22-1 ¶ 10.) On May 11, 2022, Metcalf drafted a Regular Grievance, in which he complained that he had submitted three requests to have his prescriptions renewed and to be seen for his allergies. (ECF No. 1-4, at 4.) For the first time, he mentioned that he was out of his "pain medication" and once again claimed that the delay violated VDOC operating procedures and asked to be seen by the "doctor within the policy time frame for sick call procedures." (*Id.*) On May 13, 2022, Defendant Green rejected the Regular Grievance as a "Request for Services, Medical." (*Id.* at 5.) Defendant Green was aware at the time she rejected

---

[11] Defendant Green avers that Virginia Operating Procedure 720.1 does not have a Section IV.B.3. (ECF No. 22-1 ¶ 9.)

the Regular Grievance that Metcalf had missed his appointment on May 10 and had been rescheduled for June 8. (ECF No. 22-1 ¶ 10.) During rounds, Defendant Green spoke to Metcalf, who brought up his rejected Regular Grievance, and she instructed Metcalf to submit another grievance. (*Id.* ¶ 11.)

Metcalf re-drafted the Regular Grievance on May 17, 2022, using similar language as his initial Regular Grievance, and it was received on May 18, 2022. (ECF No. 1-4, at 6.) At the time Metcalf refiled the Regular Grievance, he remained scheduled for an appointment on June 8. (ECF No. 22-1 ¶ 12.)

Metcalf missed his appointment on June 8, and was rescheduled for June 10, June 15, June 27, and June 24, but he missed each of those appointments. (ECF No. 22-2 ¶ 11.) Defendant King avers that in assisting Defendant Green in responding to Metcalf's grievance, she reviewed the nurse's logbook "in which the nurses noted missed appointments scheduled for examination, and relayed that [Metcalf] missed appointments on June 15 and 24." (*Id.* ¶ 12.) Later when she was assisting the VDOC in investigating Metcalf's grievances, Defendant King further reviewed the nurse's log and noted that Metcalf missed scheduled appointments on May 10, June 8, June 10, and June 17, and relayed this information to Ray Howard, a Grievance Coordinator for the VDOC, by email on August 4, 2022. (ECF No. 22-2 ¶ 14; ECF No. 22-4, at 1–2.)[12]

---

[12] Counsel for Defendants notes that the logbook could not be located, and the nurse who kept the logbook at the time no longer works at LCC. (ECF No. 30, at 4 n.1.) Metcalf insists this is suspicious. The contemporaneous record, however, reflects that Defendant King did exactly what she swears to in her declaration—she reviewed the logbook, noted the many missed appointments, and relayed this information to the VDOC in the form of the email cited above. (*See* ECF No. 22-4, at 1–2.)

Metcalf also vigorously disputes that he knowingly missed these appointments. (ECF No. 29-1 ¶ 38.) Metcalf claims that he was never notified by security staff that he had appointments and insinuates based on nothing more than speculation that he only "allegedly" missed appointments. (*Id.* ¶¶ 38–42.) Whether he was called for these appointments, however, is not material here. Rather, Defendants, serving in an administrative role, could rely on the medical record showing that he missed his appointments in reaching their conclusions on his grievances.

On June 30, 2022, Metcalf finally attended a scheduled appointment in the chronic care clinic for his complaints of high cholesterol and received a full check-up. (ECF No. 22-2 ¶ 15.) Relevant to Metcalf's complaint about the lack of prescription refills, Metcalf was prescribed Zyrtec and CTM for allergies and Indomethacin for arthritis. (ECF No. 22-2 ¶ 15.)

On July 18, 2022, Metcalf drafted an Inmate Request complaining that he had not received a response to the May 17, 2022 Regular Grievance he filed and needed documents to appeal. (ECF No 1-4, at 9.) The record reflects that he was provided with the necessary documents in response. (*Id.*) On July 25, 2022, Defendant Tatum rejected the Regular Grievance as "UNFOUNDED" in her Level I response. (ECF No. 1-4, at 11–12.) Defendant Tatum noted that Defendant King responded during the informal process that Metcalf had been scheduled for a physical, but that Metcalf was a no-show for his appointments on June 15 and 24, 2022. (*Id.*) Defendant Tatum also noted that Metcalf had been seen by a medical provider on June 30, 2022, and his prescription medications were ordered. (*Id.*)

In his appeal, Metcalf indicated that on June 15 and 24, "he was at work as an aide in carpentry/vocation class and was never called." (*Id.* at 12.) On August 10, 2022, Metcalf's appeal was deemed "Unfounded," because, "[i]t is reported by Nurse King that you were scheduled to be seen by the onsite medical provider on 5/10/22, 6/8/22, 6/10/22, and 6/17/22[, h]owever, you were deemed a 'no show' for these medical visits," and that he was "seen by the provider on 6/30/22 and your medications were ordered." (*Id.* at 13)

### C.    High Cholesterol (Claim One)

#### a.    Medical Records

On August 17, 2021, Metcalf received lab results that indicated that he had high cholesterol and was told that he would be scheduled to see the facility physician. (ECF No. 1-1, at 4; ECF

No. 1-3, at 2.)  Metcalf contends that as of May 24, 2022, he had not been seen by a provider. (ECF No. 1-1, 4.)  Metcalf, however, had as many as ten medical appointments between August 27, 2021, and May 24, 2022, where his vitals were normal, and Metcalf made no mention of not being seen for high cholesterol.  (ECF No. 22-2 ¶ 29.)  As discussed previously, Metcalf also missed scheduled appointments on May 10, June 8, June 10, June 15, June 17, and June 24, 2022.  (*Id.* ¶ 11.)  On June 30, 2022, Metcalf attended a scheduled appointment in the Chronic Disease Clinic for high cholesterol and received a full check-up.  (*Id.* ¶ 15; *see* ECF No. 22-3, at 2–6.)  At that appointment, Metcalf declined treatment for his cholesterol until new lab work was conducted.  (ECF No. 22-1 ¶ 15; *see* ECF No. 22-3, at 6.)  Metcalf was counseled to take his medications and to modify his diet and exercise habits.  (ECF No. 22-2 ¶ 15; *see* ECF No. 22-3, at 6.)

On July 7, 2022, Metcalf had blood drawn for lab work, and he received the results on July 13, 2022.  (ECF No. 22-2 ¶ 16.)  On July 20, 2022, Metcalf had a follow up medical appointment to discuss his labs, and his total cholesterol had improved.  (*Id.* ¶ 17.)  Metcalf's "total cholesterol levels were 195, 18 points lower than the year prior (213 to 195), and his LDL cholesterol had dropped 14 points (153 to 139)."  (*Id.* ¶ 32.)  Metcalf was provided education on exercise and diet to continue to improve his cholesterol.  (*Id.* ¶ 17.)  Metcalf had another follow up appointment on July 29, 2022, and when reviewing his symptoms, Metcalf reported to the provider, "I'm ok, thanks."  (*Id.* ¶ 18.)

**b.    Grievance Proceedings Related to Treatment for Cholesterol**

On May 24, 2022, Metcalf drafted a Written Complaint that was marked "Received" on June 1, 2022, and was logged by Defendant Green the same day.  (ECF No. 1-3, at 3; ECF No. 22-1 ¶ 38.)  Metcalf complained that he should have been seen by the chronic care physician for high

cholesterol but had not been seen. (ECF No. 1-3, at 3.) B. Russel responded on June 24, 2022, that Metcalf would be scheduled for a chronic care appointment. (*Id.*)

In the interim, Metcalf drafted a Regular Grievance on June 17, 2022, that was marked "Received" on June 23, 2022. (*Id.* at 5.) Metcalf complained that he had not been seen by a physician for high cholesterol and had not received a response to his Written Complaint. (*Id.*) Defendant Green marked the Regular Grievance as a "Request for Services," and B. Russel responded the next day. (ECF No. 22-1 ¶ 39.) Metcalf appealed this determination on June 25, 2022. (ECF No. 1-3, at 7.) The Regional Ombudsman upheld Defendant Green's decision and noted that Metcalf's Regular Grievance was untimely because the diagnostic lab test he submitted was dated August 27, 2021, but that Metcalf did not submit his Written Complaint until June 2022, ten months later. (ECF No. 22-1 ¶ 41.)

Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. *See* Operating Procedure at § 866.1.I.D.1–4. A Written Complaint must be submitted within 15 days of the original incident or discovery of the incident. *Id.* § 866.1.II.B.1.d. Subsequently, a Regular Grievance must be placed in the Grievance Mailbox within 30 days of the original incident "unless a more restrictive timeframe applies." *Id.* at § 866.1.III.B.5. "The exhaustion requirement is met only when a Regular Grievance has been accepted into the grievance process and appealed without satisfactory resolution." *Id.* at § 866.1.V.B.

Metcalf failed to file a Written Complaint until May 24, 2022, and June 17, 2022, ten months after he initially received the results showing that his cholesterol was high. Because Metcalf failed to file a timely Written Complaint and Regular Grievance, he failed to exhaust his

administrative remedies in accordance with VDOC policy for his complaint about lack of medical care for his high cholesterol.  (ECF No. 22-1 ¶ 44.)

### C.    Metcalf's Emergency Grievances (Claim Three)

On May 10, 2022, Metcalf drafted an Inmate Request stating:  "Request to see the Dentist, I am having pain in my mouth where 2 teeth were extracted in June '21."  (ECF No. 1-5, at 2.) The following day, May 11, 2022, Metcalf drafted an Emergency Grievance indicating that he had "an infection in my mouth and it has spread into my right ear.  I am having severe ear pain.  Please see asap.  I believe I am running a fever also."  (*Id.* at 3.)  The response, which came three hours later from the dentist, stated: "You will be scheduled to see the Dentist."  (*Id.*)  Defendants Green and King do not handle emergency grievances and did not handle or see this Emergency Grievance. (ECF No. 22-1 ¶ 20; ECF No. 22-2 ¶ 22.)  Rather, it was handled by E. Fant and routed to the dentistry department.  (ECF No. 22-2 ¶ 22.)

Metcalf contends that he did not receive the response to the Emergency Grievance until May 12, 2022.  (ECF No. 29-1 ¶ 17.)  Metcalf went to the dentist on his own accord that day because he "was having unrelenting earache pain and mouth pain."  (*Id.*)  The dentist examined Metcalf that same day and noted that Metcalf had small circular vesicles in the palate which may have come from herpes or a food allergy.  (ECF No. 22-3, at 12.)  The dentist noted that Metcalf indicated that the entire right side of his face hurt, and that Metcalf reported that he may have consumed a food product with cashews, and he was allergic to cashews.  (*Id.*)  The dentist prescribed Benadryl and scheduled a follow up appointment.  (ECF No. 22-2 ¶ 23.)

On May 12, 2022, after Metcalf had seen the dentist the day before, he drafted a Written Complaint alleging that, "[o]n 5/11/2022 at 1333 I submitted Emergency Grievance #161942 and I was not seen nor did I receive a response to the emergency grievance within the eight hours per

VADOC policy." (ECF No. 1-5, at 5.) On May 16, 2022, Defendant King responded that "[t]his process will be reviewed/modified accordingly. If you are still having medical issues, please submit a sick call." (*Id.*)

On May 19, 2022, Metcalf drafted a second Emergency Grievance to Unit Manager Edmonds because he "was still suffering from unrelenting each ache pain and a sore throat." (ECF No. 29-1 ¶ 19.)[13] Neither Defendants King nor Green received or processed this Emergency Grievance. (ECF No. 22-1 ¶ 20; ECF No. 22-2 ¶ 26.) On May 20, 2022, "after not being seen within the eight (8) hour time frame per VADOC policy nor receiving a response," Metcalf drafted a Written Complaint. (ECF No. 29-1 ¶ 20.) In the Written Complaint, Metcalf stated that he has "had an earache for almost two weeks. I was not seen by any health care provider or provided a response within the eight (8) hours time frame per VADOC Operating Procedure." (ECF No. 1-6, at 3.) The Written Complaint was received on May 23, 2022, and Defendant King responded on May 31, 2022, that she was "looking into the emergency grievance process with security so that we receive them timely as well as return to the inmates. However, you are scheduled to see the provider." (*Id.*) Metcalf had a scheduled appointment for June 8, 2022. (ECF No. 22-2 ¶ 27.)

On May 24, 2022, Metcalf drafted a Regular Grievance that was received on June 1, 2022, in the Grievance Department. (ECF No. 1-5, at 7.) Metcalf states that "[o]n 5/11/2022 . . . I submitted [an] Emergency Grievance . . . and I was not seen nor did I receive a response to the emergency grievance within eight hours per VADOC policy . . . [a]s of the date of this grievance I have still not been seen." (*Id.*) As a suggested remedy, Metcalf asked "[f]or DOC policies to be followed by the LVCC medical dept." (*Id.*) On June 1, 2022, Defendant Green denied the Regular Grievance as a Request for Services. (*Id.* at 8.)

---

[13] Metcalf did not submit a copy of this Emergency Grievance.

On June 10, 2022, Metcalf drafted another Regular Grievance that was received on June 15, 2022. (ECF No. 1-6, at 7.) Metcalf again complained that he "was never seen by medical nor provided a response within the 8 hour time frame per VADOC policy" and that "[n]ot seeing me within the prescribed time frame or at all, left me to suffer continuous earache pain for over two weeks without any treatment." (*Id.*) On June 20, 2022, Defendant Green denied the Regular Grievance because the time for filing a grievance had expired. (*Id.*) On June 27, 2022, the Regional Ombudsman overturned that decision and ordered the Regular Grievance to be logged. (*Id.* at 11.) Defendant Green logged the Regular Grievance on July 15, 2022, and began an investigation. (ECF No. 22-1 ¶ 33.)

On June 30, 2022, Metcalf saw the medical provider and apparently at that point any ear problem had resolved as the doctor noted nothing related to his ear, throat, or mouth. (ECF No. 22-3, at 2–6.)

On August 22, 2022, Metcalf drafted an Inmate Request seeking status of the investigation. (ECF No. 1-6, at 14.) Defendant Green noted that the Regular Grievance due date was continued until September 14, 2022, because she was awaiting additional information. (*Id.*) Defendant Green subsequently determined that Metcalf had been seen for a chronic care visit on June 30, 2022, and recalled that Metcalf had missed multiple appointments in May and June of 2022. (ECF 22-1 ¶ 35.) Nevertheless, with respect to his complaints that his Emergency Grievances were not properly handled, on October 18, 2022, Defendant Tatum found Metcalf's Regular Grievance "FOUNDED" and noted that Defendant King was looking into the emergency grievances process "so that security staff will do a better job of handling the emergency grievances in a timely manner." (ECF No. 1-6, at 16.) Defendant Tatum noted that Metcalf was seen in medical on June 30, 2022. (*Id.*)

## III. ANALYSIS

Metcalf appears to suggest that Defendants Tatum and King are accountable in Claims One, Two and Three on 1) the basis of supervisory liability; 2) because they failed to address the alleged denial of adequate medical care in the grievances and appeals that they responded to; and, 3) because they failed to ensure that the grievance process ran in accordance with VDOC policy. For Defendant Green, Metcalf contends that she is liable 1) because she failed to address the alleged denial of adequate medical care in the grievance materials she responded to; and 2) for not ensuring VDOC policies were followed. Finally, Metcalf contends that Geo Group, Inc., is responsible on 1) the basis of supervisory liability; and 2) because due to alleged staff shortages he was not seen by medical according to VDOC policy.

Metcalf's claims can be dismissed for many reasons. First, Metcalf did not properly exhaust his administrative remedies for Claim One. Second, although Metcalf indicates that his claims against Defendants are brought as claims of denial of adequate medical care under the Eighth Amendment, the thrust of his allegations is that Defendants failed to follow VDOC policy with respect to the timing of his medical care and in responding to his grievance materials. These claims are non-starters, as discussed in Part III.D below. Third, Metcalf fails to show that any Defendant is liable on a supervisory basis, or that Defendants denied him adequate medical care through their limited role in responding to his grievances. Finally, although not the focus of his complaints against Defendants, Metcalf's underlying Eighth Amendment claims lack merit.

### A.    Claim One is Unexhausted

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Metcalf failed to properly exhaust Claim One in which he complains about the lack of medical care for his high cholesterol. Under VDOC Operating Procedure, a Written Complaint must be submitted within 15 days of the original incident or discovery of the incident. *Id.* § 866.1.II.B.1.d. A Regular Grievance must be placed in the Grievance Mailbox within 30 days of the original incident "unless a more restrictive timeframe applies." Operating Procedure § 866.1.III.B.5. Metcalf did not file a Written Complaint about his cholesterol until May 24, 2022, nine months after he initially received the results on August 27, 2021, showing that his cholesterol was high. Metcalf failed to file a Regular Grievance until June 17, 2022. Because Metcalf failed to file a timely Written Complaint and Regular Grievance, he failed to exhaust his administrative remedies in accordance with VDOC policy for his complaint about lack of medical care for his

high cholesterol.[14]  (ECF No. 22-1 ¶ 44.)  Accordingly, Claim One is unexhausted and will be

DISMISSED.[15]

## B.    General Eighth Amendment Principles

To survive summary judgment, an inmate must demonstrate (1) that objectively the

deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the

---

[14] Metcalf indicates that it was not until May of 2022, that he "reviewed his medical documents and realized that [he] had not been seen for [high cholesterol] that was ordered" in August 2021. (ECF No. 29-1 ¶ 22.)  This is insufficient to make his Written Complaint or Regular Grievance timely and fails to excuse his lack of exhaustion.  Metcalf also attempts to argue that the continuing violation doctrine applies, and he could file a grievance at any time.  Metcalf, however, complains of one instance when medical staff were supposed to schedule him for a chronic care visit two weeks after his August 27, 2021 appointment.  This was not an instance where Metcalf continuously asked to be scheduled and was not.  *See A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (explaining that "continu[ing] unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation" and that "[o]nly 'if the same alleged violation was committed at the time of each act[] [does] the limitations period begin[] anew with each violation'").

[15] Generally, a dismissal for lack of administrative exhaustion is without prejudice.  The record, however, establishes that Claim One can be dismissed for all of the reasons that follow with respect to Claims Two and Three, but more importantly, because it lacks merit.  First, Defendants King and Tatum were not personally involved in any aspect of Claim One.  Accordingly, any claim against Defendants King and Tatum may be dismissed for lack of personal involvement.
    Second, "[w]here an inmate's inadequate medical care claim is predicated upon a delay in care, the inmate must also establish that the delay in the provision of medical care "resulted in substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *id.* at 754 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)) (identifying this additional requirement of the objective prong); *see Webb v. Hamidullah*, 281 F. App'x 159, 166–67 n.13 (4th Cir. 2008) (citing cases for "substantial harm" requirement).  "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citations omitted); *see Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).  Metcalf was clearly not in danger of serious harm from the delay in being scheduled for an appointment for his cholesterol.  Indeed, by the time he was seen for his cholesterol, he "rejected or disagreed" with the doctor's "recommendation to use medication as treatment." (ECF No. 29, at 29.)  Moreover, after further testing, Metcalf's cholesterol had decreased to lower levels, and Metcalf refused any further treatment.  Accordingly, Claim One can also be dismissed on the merits and as frivolous; therefore, the dismissal is one with prejudice.

prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  With respect to the denial of adequate medical care, "a prisoner must [demonstrate] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to demonstrate that a particular defendant acted with deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough.  The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate

in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### C.    Supervisory Liability

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

With respect to Defendants Tatum and King, Metcalf explicitly states that they are liable on a theory of supervisory liability. (*See, e.g.*, ECF No. 1-1 ¶ 82, 87.) Metcalf indicates that Defendant Tatum's and Defendant King's liability stems from their supervisory roles as the Facility Administrator and Health Services Administrator at LCC. While Metcalf does not specifically state that Defendant Green is liable on a theory of supervisory liability, he indicates that she "is legally responsible as the Grievance Coordinator at [LCC]" to "ensure[] that [VDOC] policies and Operating Procedures are being followed," (*id.* ¶ 89); thus, Metcalf's allegations against Defendant Green also sound in supervisory liability. Contrary to Metcalf's suggestion,

19

Defendants Tatum, King, and Green are not liable simply because they supervised other individuals who may have violated his rights. *See Vinnedge*, 550 F.2d at 928. More importantly, Metcalf fails to identify any individual or subordinate whom Defendants Tatum, King, or Green supervised who violated his rights.[16]   To the extent that Metcalf believes that Defendants Tatum, King, and Green should be held liable under a theory of *respondeat superior* simply based on their positions, his claims fail on summary judgment. *Cf. Iqbal*, 556 U.S. at 676.   Accordingly, any claim based on the supervisory liability of Defendants Tatum, King, and Green will be DISMISSED.

### D.    Failing to Ensure VDOC Policies Were Followed

Metcalf contends repeatedly throughout his Complaint that Defendants failed to ensure that his grievance materials, especially his emergency grievances, were properly handled and that he often received no response. But "inmates have no constitutional entitlement or due process interest in access to a grievance procedure.  An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Doans v. Rice*, No. 87-7244, 1987 WL 38813, at *1 (4th Cir. Oct. 15, 1987) ("Because inmate grievance

---

[16] To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show that:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted) (citations omitted).  Metcalf fails to allege facts that support any one of these three factors.

procedures are not constitutionally required in state prison systems, the failure to follow grievance procedures does not give rise to a § 1983 claim."). Thus, any claim that Defendants failed to ensure that the grievance process was properly followed lacks merit.

Similarly, to the extent that Metcalf contends that Defendants failed to ensure that unidentified prison officials followed VDOC policies with respect to the handling of his grievance materials or ensuring that he received medical care in compliance with VDOC policy, this claim again lacks merit. Metcalf repeatedly insists that his grievances were not responded to in a timely manner and that Defendants "failed to ensure that the Plaintiff had continued access to medical treatment per the [VDOC] Operating Procedures" and failed to ensure he was seen by medical in the time prescribed by VDOC policy. (*See, e.g.*, ECF No. 1-1, at 17–18.) Violations of prison operating procedures do not implicate constitutional rights and are not cognizable under § 1983. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990). Accordingly, Metcalf's claims that Defendants failed to ensure that VDOC policies were followed will be DISMISSED as legally frivolous.

### E.     Specific Responses to Grievance Materials

As a preliminary matter, simply "[r]uling against a prisoner on an administrative complaint does not [automatically] cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (stating further that "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not"); *cf. Chamberlain v. Clarke*, No. 7:14–cv–00013, 2014 WL 2154183, at *3 (W.D. Va. May 22, 2014) (noting that an inmate's "dissatisfaction with [a prison official's] responses to his grievances is a non-starter"). Moreover, generally, "a supervisor's after–the–fact denial of a grievance falls short of establishing § 1983

liability." *DePaola v. Ray*, No. 7:12CV00139, 2013 WL4451236, at *8 (W.D. Va. July 22, 2013) (citing *Brooks v. Beard*, 167 F. App'x 923, 925 (3rd Cir. 2006)). Thus, contrary to Metcalf's suggestion, Defendants Tatum, King, and Green are not liable simply because they responded to a complaint, grievance, or appeal complaining about a purported violation of his rights.[17]

The record also fails to reflect "that the communication[s], in [their] content and manner of transmission, gave the prison official[s] sufficient notice to alert [them] to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Metcalf must demonstrate that Defendants "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F .3d 555, 561 (7th Cir. 1995)).

### a.    Claim Two (Prescriptions)

In Claim Two, Metcalf contends that Defendants King, Green, and Tatum denied him adequate medical care by delaying his receipt of a prescription for pain medicine. (ECF No. 1-1, at 20–26.) Nothing in the record, however, reflects that Metcalf required this prescription on an emergent basis or that he suffered any harm, much less a significant or serious harm, from any delay in its receipt. The medications that Metcalf sought and received were for arthritis and allergies. Metcalf does not establish that either of these conditions were objectively serious medical needs or that the delay in receipt of these medications "resulted in substantial harm" to

---

[17] It is possible that an individual tasked with responding to prisoners' complaints could be found deliberately indifferent. For example, if she "routinely sent each grievance to the shredder without reading it, that might be a ground of liability." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (citing *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005); *Vance*, 97 F.3d at 993. Or perhaps she could be liable if she "intervened to prevent the medical unit from delivering needed care." *Id.* (citing *Hernandez v. Keane*, 341 F.3d 137 (2d Cir. 2003). The record, however, reflects no such extreme conduct by the Defendants, and Metcalf fails to demonstrate that the Defendants violated his Eighth Amendment rights.

Metcalf. *Mata*, 427 F.3d at 751 (citation omitted). Thus, to the extent that Metcalf truly intends to raise an Eighth Amendment claim against any of the Defendants, he fails to meet the objective prong of the analysis. For this reason alone, Claim Two will be DISMISSED.

Nevertheless, even if Metcalf's need for medication was sufficiently serious, the record establishes that Defendants King, Green, and Tatum were not deliberately indifferent to that need through their limited role in the grievance process.

### 1.    Defendant King

With respect to Defendant King, Metcalf drafted a Written Complaint on April 15, 2022, stating that "I submitted an offender request for[m] to be seen by the doctor to re-new my medication prescriptions and request new prescription for allergies." (ECF No. 1-4, at 3.) The Written Complaint was stamped received on April 19, 2022, and was assigned to the medical department. (*Id.*) On April 28, 2022, Defendant King noted that Metcalf was "scheduled for the physical as requested." (*Id.*) Metcalf's appointment was scheduled for May 10, 2022. (ECF No. 22-1 ¶ 9.) Metcalf missed that appointment, and many subsequent appointments. The record fails to demonstrate that Metcalf's Written Complaint put Defendant King on sufficient notice of an excessive risk of harm to Metcalf's health or safety. Metcalf simply asked for unidentified prescriptions to be renewed and noted nothing emergent about the request. Moreover, Defendant King could rely on the medical record showing that Metcalf was scheduled with the medical department to have his concerns addressed.

To the extent that Metcalf faults Defendant King for the delay in responding to his Written Complaint,[18] Defendant King explains that the facility was on annual lockdown between April 9

---

[18] The record does not reflect that Defendants King, Green, or Tatum had any knowledge of the alleged Informal Requests that Metcalf claims to have filed starting in March of 2022.

and 15, 2022, and that the medical department and other operations experienced a backlog after the lockdown. (ECF No. 22-2 ¶ 10.) In addition, as discussed above, Metcalf fails to demonstrate, as he must, that any delay in receiving his medications "resulted in substantial harm." *Mata*, 427 F.3d at 751 (citation omitted). In sum, Metcalf fails to show that Defendant King was deliberately indifferent to his serious medical needs with respect to his Written Complaint. Claim Two against Defendant King will be DISMISSED for lack of merit and as frivolous.[19]

### 2.    Defendant Green

As noted above, Metcalf missed his scheduled appointment on May 10, and he was rescheduled for an appointment on June 8. (ECF No. 22-1 ¶ 10.) On May 11, 2022, Metcalf drafted a Regular Grievance, in which he complained that he had submitted three requests to have his prescriptions renewed, he was out of his "pain medication," he wanted to be seen for his allergies, and he complained that the delay violated VDOC operating procedures. (ECF No. 1-4, at 4.) On May 13, 2022, Defendant Green rejected the Regular Grievance as a "Request for Services, Medical," and she was aware that Metcalf had missed his appointment on May 10 and had been rescheduled for June 8. (ECF No. 22-1 ¶ 10.) During rounds, Defendant Green spoke to Metcalf, who brought up his rejected Regular Grievance, and she instructed Metcalf to submit another grievance. (*Id.* ¶ 11.)

Metcalf re-drafted the Regular Grievance on May 17, 2022, using similar language as his initial Regular Grievance and it was received on May 18, 2022. (ECF No. 1-4, at 6.) At the time Metcalf refiled the Regular Grievance, he was scheduled for the appointment on June 8. (ECF

---

[19] Defendant King also reviewed the medical record to assist Defendant Green in responding to Metcalf's grievance materials and noted that Metcalf had missed many medical appointments. While Metcalf claims that he was never called for these appointments, at the time of her response, Defendant King could rely on the medical record in making a recommendation to Defendant Green about whether Metcalf's complaints were founded.

No. 22-1 ¶ 12.)  The record fails to demonstrate that Metcalf's Regular Grievance put Defendant Green on sufficient notice of an excessive risk of harm to Metcalf's health or safety.  Metcalf simply asked for prescriptions to be renewed and for a new prescription for allergies.  Moreover, Defendant Green could rely on the medical record showing that Metcalf was scheduled with the medical department to have his concerns addressed.  In addition, Metcalf fails to demonstrate that any delay in receiving his medications "resulted in substantial harm."  *Mata*, 427 F.3d at 751 (citation omitted).  In sum, Metcalf fails to show that Defendant Green was deliberately indifferent to his serious medical needs with respect to his Regular Grievance, and Claim Two against Defendant Green will be DISMISSED for lack of merit and as frivolous.

### 3.     Defendant Tatum

With respect to Claim Two, on July 25, 2022, Defendant Tatum rejected Metcalf's Regular Grievance as unfounded in his Level I response. (ECF No. 1-4, at 11–12.)  Defendant Tatum noted that Defendant King responded during the informal process that Metcalf had been scheduled for a physical, but that Metcalf was a no-show for his appointments on June 15 and 24, 2022.  (*Id.*)  Defendant Tatum also noted that Metcalf had been seen by a medical provider on June 30, 2022, and his prescription medications were ordered.  (*Id.*)  Although Metcalf disputes that he was ever called for these appointments, Defendant Tatum was entitled to rely on the medical records that showed that Metcalf has missed these appointments.[20]  Defendant Tatum could reasonably believe that Metcalf was not serious about having this concern addressed because the medical record reflected that Metcalf missed at least six scheduled appointments.  Moreover, by the time Defendant Tatum addressed the appeal, Metcalf had been prescribed his medications.  Metcalf

---

[20] The record reflects that Defendant King reviewed the nurses' logbook, and it showed that Metcalf consistently failed to show for appointments.  (ECF No. 22-4, at 2.)  Nevertheless, the medical department continued to reschedule him.

fails to show that his appeal placed Defendant Tatum on sufficient notice of an excessive risk of harm to Metcalf's health or safety or that by simply rejecting his grievance Defendant Tatum became liable. *See George*, 507 F.3d at 609; *DePaola*, 2013 WL 4451236, at *8 (citation omitted). Accordingly, Claim Two against Defendant Tatum will be DISMISSED for lack of merit and as frivolous.

  **b.**  **Claim Three (Emergency Grievances for Earache)**

  In Claim Three, Metcalf contends that Defendants King, Green, and Tatum "fail[ed] to properly respond to emergency grievance[s]" with respect to his earache. (ECF No. 1-1, at 26–37.) The record, however, reflects that Defendants King, Green, and Tatum were not personally involved in the emergency grievance process and had no knowledge of the two Emergency Grievances that Metcalf submitted with respect to his earache and sore throat.  Emergency grievances are handled entirely by security staff and the medical department relies on security staff to timely deliver the emergency grievances to the medical department.  Rather, Metcalf seemingly intends to impute liability on Defendants King, Green, and Tatum for their role in the grievance process where he later complained about the lack of timely responses to his Emergency Grievances.  As with Claim Two, simply responding to Metcalf's grievance materials about how unidentified staff failed to respond to Metcalf's Emergency Grievances does not make Defendants King, Green, or Tatum liable for any alleged underlying constitutional violation. *George*, 507 F.3d at 609; *DePaola*, 2013 WL 4451236, at *8 (citation omitted).  Additionally, Metcalf's various grievance material failed to place Defendants King, Green, and Tatum on sufficient notice of an excessive risk of harm to Metcalf's health or safety.

  The record demonstrates that Metcalf's overriding complaint in his various grievance materials was that medical staff failed to respond to his Emergency Grievances in the time required

by VDOC policy. (*See, e.g.*, ECF No. 1-6. At 3; ECF No. 29-1 ¶ 20.) The heart of Metcalf's complaint in the grievance materials was not that he was denied adequate medical care, but that staff failed to follow VDOC policies.[21] As explained previously, violations of VDOC policy fail to state a claim for relief under § 1983. *See Riccio*, 907 F.2d at 1469.[22] Defendant King responded on May 31, 2024, to Metcalf's Written Complaint that she was "looking into the emergency grievance process with security so we receive them timely as well as return to the inmate. However, you are scheduled to see the provider." (ECF No. 22-2 ¶ 27.) At that point, Metcalf had a scheduled appointment for June 8, 2022. (*Id.*) Metcalf does not show that his Written Complaint put Defendant King on sufficient notice of an excessive risk of harm to Metcalf's health or safety. Metcalf's Written Complaint focused on violations of policy and for his complaint of an "earache," Defendant King knew that Metcalf was scheduled for a medical appointment.

Similarly, Defendants Green and Tatum were involved solely because they responded to Metcalf's Regular Grievance and provided a Level I appeal response about the delay in processing his Emergency Grievances. In his June 10, 2022 Regular Grievance, Metcalf indicated that he was "left . . . to suffer continuous ear ache pain for over two weeks without any treatment." (ECF No. 1-6, at 7.) Thus, to the reviewer, it would appear that Metcalf's ear pain had resolved by that time. Moreover, by the time Defendants Green and Tatum responded on June 20, and October 18, 2022, Metcalf had been seen by the dentist on May 12, 2022, and was seen again in the medical

---

[21] For example, Metcalf's suggested remedy was for the policy for emergency grievances to be strictly followed and for "training to be documented," not that he direly needed to be seen by the medical department. (ECF No. 1-6, at 7.)

[22] While Defendant King chose to attempt to correct the delays in the emergency grievance procedure, this fails to make her liable to Metcalf on constitutional grounds. Rather, this demonstrates that she was not deliberately indifferent to Metcalf's medical needs, but instead wanted to ensure that there was improvement in staff handling of emergency grievances.

department on June 30, 2022. Additionally, both Defendants were aware that Metcalf had missed many medical appointments prior to the June 30, 2022 appointment, casting doubts on the seriousness of Metcalf's underlying medical issue.

More importantly, the entire premise of any alleged denial of adequate medical care in Claim Three is patently false. Metcalf repeatedly contends that he was "was never seen by [LCC] medical for the sore throat or earache," (ECF No. 29-1 ¶ 17), was never treated, and was left with ear pain for two weeks. (ECF No. 1-6, at 7.) Metcalf submitted the first Emergency Grievance on May 11, 2022, and was seen and treated by the dentist the following day. The dentist noted that Metcalf was complaining about pain and that the entire right side of his mouth hurt, observed that Metcalf had sores in his mouth from either herpes or an allergy, and prescribed Benadryl for the inflammation. (ECF No. 22-3, at 12.) Despite Metcalf's representations to the contrary, the dentist certainly qualifies as a medical provider, and Metcalf clearly received treatment. Metcalf is not a medical expert qualified to determine whether he needed to see a different medical practitioner to treat his sore throat and ear pain. Defendants could reasonably believe that Metcalf had been seen and appropriately treated by the dentist for his complaints, and for any alleged residual pain, he was scheduled to see the doctor.[23] *Iko*, 535 F.3d at 242 (holding that once an

---

[23] Metcalf's alleged medical need evolves in his submissions. In his grievance materials he complained of pain in his mouth and his ear. In his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment his medical need has changed to a "hearing impairment" which is entirely different than pain in his mouth and ear. (ECF No. 29, at 22.) The Court has already addressed Metcalf's complaint about his hearing impairment, a condition that preexisted this case by many years. *See Metcalf v. Geo Group, Inc.*, No. 3:19CV842–HEH, 2022 WL 567837, at *6 (E.D. Va. Feb. 24, 2022).

While an "unrelenting earache" and sore throat could potentially amount to a serious medical need, Metcalf once again fails to show that any delay in receiving treatment "resulted in substantial harm." *Mata*, 427 F.3d at 751 (citation omitted). Metcalf contends that his ear pain began on May 5, 2022. (ECF No. 1-6, at 3.) Metcalf saw the dentist on May 12, 2022. Metcalf indicated in his Regular Grievance filed on June 10, 2022, that his pain lasted two weeks. (ECF No. 1-6, at 7.) Thus, during this time two-week period, he received medical treatment from the dentist, and the ear pain apparently resolved. His June 30, 2022 physical notes mentioned nothing

inmate is placed in the care of appropriate medical personnel, "a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir 2004))).

In sum, Defendants King, Green, and Tatum were not deliberately indifferent to Metcalf's serious medical needs through their limited role in the grievance process. Claim Three will be DISMISSED with respect to Defendant King, Green, and Tatum for lack of merit and as frivolous.

### F.    Geo Group, Inc.

Metcalf contends that Geo Group, Inc., is responsible on 1) the basis of supervisory liability for the acts of their employees; and 2) due to staff shortages, he was not seen by medical according to VDOC policy. A private corporation cannot be held liable "for torts committed by [its employees] when such liability is predicated upon a theory of *respondeat superior*." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Instead, "a private corporation is liable under § 1983 only when an official policy or custom of the Corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted). Metcalf has not demonstrated that any policy or custom of Geo Group, Inc., caused the violation of his constitutional rights.[24] At most, he claims that Geo Group, Inc., allegedly had staff shortages that caused him to not be seen by medical in the time required by VDOC policy, a statement not supported by any evidence.

---

about his ear or mouth. Once again, to the extent that Metcalf's true complaint was that he received inadequate medical care, Metcalf also fails to show that any Defendant was deliberately indifferent to his serious medical needs.

[24] To the extent that Metcalf contends that the Geo Group, Inc., was responsible for some policy or procedure that led to his allegedly inadequate medical care, such a claim would fail. Metcalf must demonstrate that: (1) the Geo Group, Inc. had an official policy or custom of providing unconstitutional medical care; (2) that this official policy or custom reflected deliberate indifference to Metcalf's Eighth Amendment rights; and, (3) that this policy or custom caused or contributed to the cause of Metcalf's allegedly inadequate medical care. *Spell v. McDaniel*, 824 F.2d 1380, 1385–88 (4th Cir. 1987). Metcalf fails to demonstrate any one of these three factors.

Furthermore, because Metcalf failed to show that any employee of Geo Group, Inc., violated his Eighth Amendment rights, any remaining claim against Geo Group, Inc., must be dismissed. *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability." (quoting *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999)).[25]  In sum, to the extent that they have not already been dismissed on other grounds, Claims One, Two, and Three against GEO Group, Inc., will be DISMISSED.

## IV.    CONCLUSION

Defendants' Motion for Summary Judgment, (ECF No. 21), will be GRANTED.  Metcalf's claims will be DISMISSED for lack of merit and as frivolous.  The action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 12 February 2025
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[25] Both of these cases have been abrogated in part on other grounds by *Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023).